0735326 Brewer v. Parker Hannifin. Your side is allotted 10 minutes. Good morning. Good morning, Your Honors. Louis Franicki appearing for the appellant. Your Honor, the direct proximate cause of the crash and the death of the four people involved in this case was the reliance by an aviation mechanic on the appellee's maintenance manual and the installation of a vacuum pump on the subject airplane. That's uncontroverted. That is direct testimony. It's in the briefs. The issues that we have before this court, however, are more related to a number of areas that I quite honestly don't quite know exactly where it's going to go. We have in the Ninth Circuit now the Montoyo case that has established preemption of the federal aviation regulations as far as aviation-related matters are concerned. We also have a choice of law decision made by the lower court to apply Ohio law to the summary judgment motion brought by the appellees. So I am now in a quandary in a way because of this dichotomy between what actually applies and also what is the import of the federal preemption that evidently is the wave sweeping the land. Now, in this particular case, I have briefed very, very strenuously and long that the federal aviation regulations require maintenance manuals for parts such as a vacuum pump that was involved in this case. In this case, the vacuum pump, you say they were relying on, as a matter of fact, the defendant's... Maintenance manuals. Maintenance manuals, but the defendant says this wasn't even their vacuum pump. It was a vacuum pump that had a couple of their parts in it, but it had been completely reconstituted from a bunch of spare parts by somebody else and maybe by two other people. And essentially, if anybody was relying on their maintenance manual, they shouldn't have been. Absolutely right. However, and that's where we get into the issue because the first thing starts with the vacuum pump, but then under Ohio law, this continuing duty to warn and or instruct under post-marketing conditions is exactly what's involved. However, I don't want to focus on your point. Sorry, you're not answering my question. That's right. I want to focus on your question. The question is then, is a maintenance manual itself a separate defective either part or a defective act? No, but if it has no application to the object, then what's the difference what it is? It simply doesn't belong there. It does under Ohio law, though. Under Ohio law, under post-marketing conditions, it indicates that under their statute that if it is related to the product, then those post-marketing conditions are in fact related to the product. And the lower court found that parts of the vacuum pump were in fact identified as being from the appellee. But it's more than that. But what specifically in this manual are you saying was defective? It's actually the absence of it. The manual itself did not impart, and this was a 1998 manual, so it was well within the Ohio 10-year statute and well within the 18-year GARA, or General Aviation Revitalization Act statute. It's what it doesn't say. It doesn't tell the mechanic that he cannot install an old unused or used part vacuum pump, that he has no idea what the history is of it, what conditions it may have experienced, whether or not it was defective inside, due to either a crash or sudden stoppage or dirt or anything of that nature. You've been referring to this as a manual. Is it really a manual? Yes, it is, and it is. I don't have the exact site, but it is in the record. Was it a service bulletin or a mailing of some sort? Well, you just raised a very interesting point, Justice Silverman. There are two things. First, we have the specific manual, which is in the appellant record. Then we also have mailings. Both are sent out indiscriminately to very specific people in the aviation industry. When I say indiscriminately, I mean all pilots, all mechanics, all owners of certain types of aircraft that would be employing the different models of these various vacuum pumps. But the question is, why did you sue these people? Why didn't you sue somebody else for not telling people not to? In other words, they were getting mailings all the time. Does everybody have a responsibility who sends them mailings to say, and don't put in parts that you don't know what they are and you don't know if they're any good? That's essentially what you're saying they had an obligation to say. I'm saying that if you do something and the mechanic relied upon this specific manual and what was done in that manual is negligent and or defective, then that manual and the people who made that manual then are responsible for what the mechanic did. So every manual that goes to or mailing that goes to a pilot in the airline industry has to say, don't put any parts in. They don't know what they are and aren't any good. Yeah, and it's more subtle than that for a mechanic in this particular vacuum pump because of the nature of the way the vacuum pump is manufactured. The federal aviation regulations require maintenance manuals for, quote, accessories. This is an accessory as defined under the FARs. The pump itself cannot be disassembled by the mechanic in the field. They can't do it. I mean, that's just the way it's made. If they do disassemble it, it's possible to do it. But if they do disassemble it, they ruin the ability of reassembling it correctly. You have to have a certain level of training and certification to do that. The average mechanic can't do that. And that's where the problem lay within this manual, that the manual does not say specifically how you are not supposed to put this pump back on when you don't know its history because it's subject to all kinds of problems with it, such as a senior crew. That's really, I mean, you're sort of one of don't be stupid warning. It's more than that. I only finish in all the maintenance manuals because it's true, you know, with every aircraft and with all of these parts which are certified by the FAA that, you know, if you don't put on the exact part manufactured by the manufacturer, you take some risk. If you put on a part that is not certified, you take a risk. But the maintenance manuals have never been required to say, don't be stupid and put on an uncertified part. They talk about maintenance and after maintenance of that part. So I think the burden you're imposing to me seems kind of impractical in terms of the obligations that you place on the manufacturer. First of all, you're raising a jury question, and that's part of why I'm asking for remand. The second part of the answer. As a matter of law, there's some questions as to what you'd have to require as a matter of law. If there is a duty, which I believe there is under both the Ohio law and the federal law, that if a Pelley acts, which they did, then they cannot act. They acted not by making a part but by sending out a manual. Correct, correct. They cannot act negligently, or they cannot send out a defective part. And that's what the lower court didn't seem to get, in my view. They didn't seem to get the distinction that there is a difference between, quote, a failure to warn versus a defective product that is an instruction or a maintenance manual. But doesn't the product have to be part of the airplane? Not under Ohio law. The Chrislip case, and I knew you would ask this question. The Chrislip case very specifically, which is an Ohio Supreme Court case, says specifically in it that a product may be unreasonably dangerous, strict liability may apply as the result of a lack of adequate warning, even though the product has no design or manufacturing defect. But that's not the problem here. The problem is it isn't their product. It's not their product. See, you have this separate act. I'm alleging that the manual itself is defective. And that was what was disseminated and mailed. The part itself, the vacuum part, the vacuum pump, is a patented device that was patented by the appellee. The patent ran out. They continued to put these parts out there. They admit that these manuals apply to overhauled pumps, which this was an overhauled pump. They say in their briefs that they don't admit that at all, that they – and you keep saying they do admit it. It's in the record that they did. It's in the appellant record because they put it in. Where? Well, I'd have to go back and dig it out for you. You've got about a minute left. Do you want to reserve it? I would like to reserve. But it is in the appellant record that they do admit that it does apply. Thank you, sir. Good morning. Good morning. May it please the Court, my name is Dana Bianco. I'm with Jones Day, and I represent Parker Hannafin Corporation. Your Honors, I'd like to bring us back a little bit from – back to the issues before you. What we have here, Mr. Frannike pled a strict products liability action. That's all that was below, that's all that was before the Court. So all the discussion today about negligence and duty is not before the Court. There's only a strict liability cause of action. That strict liability cause of action was based on the vacuum pump that, plaintiff alleged, was Parker Hannafin's. The district court below found that that part had been substantially changed. And under Ohio law, and under the undisputed facts in this case, that barred the products liability action from going forward. Mr. Frannike has never raised or challenged that issue before you. And on that basis alone, that is enough for the Court to affirm the district court's grant of summary judgment. But he now seems to be saying that the manual is a different product, essentially. Yes, he is. And he has provided the Court with absolutely no basis for that proposition. The manuals themselves are part and parcel, or they are related to the vacuum pump that Parker Hannafin manufactured that were not on this aircraft. In Ohio, maintenance manuals, service bulletins, mailings cannot be products. And we addressed that below. The district court addressed that below. We addressed it here. Mr. Frannike spent two paragraphs in his reply brief. And basically what he said was, but Parker doesn't understand, they already sold the product. They sold a vacuum pump, which brings us full circle back to a strict products liability action that he brought. Essentially, was it the effort to amend the complaint that would have brought in the negligence action? Yes, it would have. And that was denied by Judge Dilley? It was. That's correct. Before this Court, there are no choice of law challenges here. There are no challenges to Judge Dilley's motion or ruling that the amendment should be denied. Mr. Frannike raised only one issue before this Court, and that is whether maintenance manuals and service bulletins, any type of publications or safety literature that was produced by my client was a replacement part for the purposes of GARA. But the Court did not reach that because GARA is a defense to a viable cause of action. We don't have a viable cause of action here. So what Mr. Frannike is asking the Court to do is to jump over the fact that there is no viable cause of action, apply the defense to a nonexistent cause of action, and then he's asking you to then invoke the ruling provision by finding that a maintenance manual is a replacement part, is an aircraft replacement part. That argument has no merit whatsoever. Judge McKeown or Judge Berger? Well, yes, I have one question. What about this representation that you have conceded that the manuals apply to reconstituted pumps? There is no place in the record, I am sure, as I stand before this Court, that Parker Hannafin intended its maintenance manuals to apply to an overhauled part. In fact, on the actual vacuum pump, it is an iron cast. In the bottom part of that iron casting, it says, this largely, do not overhaul. That was one of the pieces that Arrow Accessories took from a 1980 pump, cleaned it out, changed it, and put it back on their hodgepodge of parts that form the vacuum pump in this case. Parker Hannafin has never authorized overhauls, has never sold parts so that an outside entity could overhaul. In fact, we have warned against overhaul in all situations because it opens the pump to contamination, the very reason that a vacuum pump fails. When a contaminant gets inside of a vacuum pump, it stops the turning of the internal working parts, and we have never intended any of our parts to be overhauled or certainly any of our warnings to apply to an overhauled pump. Does it say that in the maintenance manual as well? Yes, it does. Let me point the Court to, we talk about in the record, we talk about several things. We talk about sudden engine stoppage, the record at 240 and 368. We talk about contamination, 351, 241. We talk about if you don't know the amount of hours that are on the vacuum pump, the record at 78, 352, 359. We talk about overhauls and other inferior kits, 359. We reiterate that, and what is really ironic is Arrow Accessories, the party that actually put together this hodgepodge of pieces, they sent out a mailing that said, that quoted our warnings that said, Parker does not authorize overhaul, but we don't agree with them, and we're going to do it anyway. So it was also well known in the industry that overhaul was not to be done with a Parker Hennepin vacuum pump. That's good. Thank you so much. Thank you very much. Brenna, you've got about a minute left, sir. Thank you, Your Honor. Your Honor's asked where the Parker admits to the mailing and instruction manuals apply the overhaul vacuum pump. They're cited on page six of the appellant reply brief. In the record, it would be 157-160 in the excerpt of the record. The appellee did not bring a summary judgment motion on the manuals in the lower court. I brought up that issue in the reply because that was an issue that had not been brought up, and that's why I raised it. Why doesn't her argument that you lose on state law grounds? It's not true because the state law grounds, the judge did not address the issue of the separate action by the appellant by mailing these manuals out to everybody indiscriminately, and that was one of the issues I raised. What he said is it's just a simple failure to warn issue, and that's not true, because there is a requirement by the Ohio statutes for post-marketing warnings, but then they sent these things out, and I addressed it in my appellant briefs that these manuals don't have to be sold as such. When somebody does a negligent act or sends out a defective product, a la the manuals, to every mechanic in the United States, they would expect these people to rely upon it. The fact is that the actual mechanic who actually installed this vacuum pump testified, and it's in the records, that he relied on this manual. He did not know that you could not install an old pump that he didn't know the history on, and consequently he thought it was okay to put it in there, and as we found out later, the pump should have been removed. Does the pump in fact say on it, do not overhaul? It does, but the Federal Aviation Agency permits overhaul. There is an argument back and forth between appellant. Why is that sufficient that they don't have to say it again? Pardon me? Why do they have to say it again in a manual? No, no, no. The FAA permits overhauls and in fact issues licenses to various people to do these overhauls. They encourage the overhauls. Right, but when the FAA issues an overhaul license, it's not an overhaul license to overhaul that pump. No, it isn't, but again, this is where the apples and oranges come in. The apples and oranges, in other words, they have an FAA overhaul license. But you can't, just because you have an overhaul license doesn't mean you can do something that says there, don't overhaul this thing. You might be able to overhaul something else. But they say that it does. You can overhaul an engine, but you can't overhaul this pump. Back to appellee admits that their instruction manual applies to overhauled vacuum pumps. Page 6 of the appellant's replied brief citing AER 101 and 157-160. Okay, we'll take a look at that. Thank you. Thank you so much, Your Honor. Well, counsel, the case just argued is submitted. Thank you.
judges: Silverman, McKeown, Berzon